```
1   David A. Chami
    AZ No. 027585
2   dchami@cjl.law
    **The Consumer Justice Law Firm**
3   8245 N. 85th Way
    Scottsdale, Arizona 85258
4   Telephone: (480) 626-2359
    *Attorney for Plaintiff*
5
```

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Rusty William Tinker, | Case No.: |
| Plaintiff(s), | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Crimshield, Inc., | |
| Defendant(s). | **15 U.S.C. § 1681, et seq.** |

Plaintiff Rusty Tinker ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against defendant CrimShield, Inc. ("CrimShield"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. CrimShield has produced and sold consumer reports concerning Plaintiff's background that wrongfully reported that Plaintiff was found guilty of a felony.

1

3. Even though Plaintiff disputed the inaccurate reporting, CrimShield failed conduct a timely and reasonable investigation into Plaintiff's dispute and correct its reporting within the timeframe prescribed by the FCRA.

4. As a result of CrimShield's wrongful reporting, Plaintiff was damaged by, without limitation, suffering harm to his employment qualifications, loss of income, and considerable stress and anguish.

**PARTIES**

5. Plaintiff is a natural person that resides in the city of Slidell, Louisiana and qualifies as a "consumer" as defined and protected by the FCRA.

6. Defendant CrimShield is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant CrimShield is an Arizona corporation that maintains its principal place of business at 4140 East Baseline Road, Suite 208, Mesa, Arizona, 85206, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, J. Denton Dobbins Jr., located at its principal address.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the sole defendant in this action resides in this district.

## STATEMENT OF FACTS

**a.     The FCRA**

9. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

10. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

11. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**b.     Substantive Allegations**

12. At the end of December of 2012, Plaintiff attended a holiday party.

13. As part of the celebration, Plaintiff consumed alcohol and became inebriated.

14. Plaintiff stepped outside of the party to get some air and, due to his inebriation, found himself getting into a car that he had thought was his.

15. The owner of the car found Plaintiff and contacted the police.

16. Once Plaintiff explained himself, the owner decided there was no need to press charges against Plaintiff.

17. Despite the owner of the car not wishing to press charges, because the police were already contacted, the State of Louisiana charged Plaintiff with a charge of "Simple Burglary."

18. However, after the details of the incident were brought to light, on or about September 5, 2012, the assistant district attorney amended the charge to the "Attempted Misdemeanor Theft" (the "Misdemeanor Charge").

19. On that same date, the deputy clerk of court for the Fourth Judicial District Court of the State of Louisiana, Parish of Ouachita, filed an Amended Bill of Information reflecting the reduced Misdemeanor Charge (the "Amended Bill of Information").

20. Plaintiff then plead guilty to the Misdemeanor Charge.

21. The case number assigned to such legal proceedings was No. 12-F0020-5.

22. Plaintiff, somewhat relieved and vindicated by the reduction in severity of the charge, was happy to put the incident behind him and move on with his life.

23. Unfortunately, this was not to be the case.

24. On or about December 20, 2021, Plaintiff applied for a job with Communications Unlimited, Inc. ("CUI") as a cable installation technician, an area of employment in which Plaintiff has been working since 2014.

25. Plaintiff met with a representative of CUI, who advised Plaintiff that he would be a good fit for the job subject to a background check, which the CUI representative advised would be conducted by CrimShield.

26. Plaintiff consented to the background check and provided CUI with his social security number to facilitate the process.

27. That same day, Plaintiff received an email from CUI that stated "[c]ongratulations on your new position!" and provided Plaintiff with instructions to begin the employment on-boarding process, which Plaintiff followed.

28. Plaintiff then waited for his background check to be processed so that Plaintiff could begin his employment with CUI.

29. However, as of January 7, 2022, Plaintiff did not receive any further communications from either CUI concerning his employment or from CrimShield concerning the background check, and Plaintiff began to get concerned.

30. On or about January 7, 2022, Plaintiff sent a text message to the CUI representative asking for an update, as he had not heard anything from CrimShield and he was essentially in a state of limbo.

31. The CUI representative responded that he would follow up.

32. On or about January 9, 2022, Plaintiff received an email from CrimShield with instructions to access his background consumer report ordered by CUI.

33. Plaintiff accessed the report on or about January 9, 2022, and, to his shock, found that the CrimShield background consumer report (the "January CrimShield Consumer Report") was reporting that Plaintiff was found guilty of a felony.

34. Specifically, the January CrimShield Consumer Report, which was addressed to CUI, stated "[y]our request to research the below listed subject is now completed" and "[a]ttached are the results of the investigative consumer report that either you submitted to CrimShield and certified was authorized by your applicant, or that you ordered for yourself."

35. Page 1 of the January CrimShield Consumer Report then stated the following: "[a]lthough this applicant may pass your employment criteria, this applicant may not pass some of your clients' security clearance criteria for access to your clients' customers, facilities and constructions sites" (the "Security Clearance Disclaimer").

36. Page 1 of the January CrimShield Consumer Report then reported a heading titled "APPLICATION WIDE COMMENTS," under which the following comment was reported: "01/07/2022 - CRIMINAL RECORD FOUND. PLEASE REVIEW THE FULL REPORT FOR MORE DETAILS."

37. Page 2 of the January CrimShield Consumer Report stated Plaintiff's full name (*i.e.*, Rusty William Tinker), the last four digits of Plaintiff's social security number, and Plaintiff's date of birth.

38. Below Plaintiff's personal identifying information, Page 2 of the January CrimShield Consumer Report stated the following:

| NUMBER OF FELONIES/INDICTABLE OFFENSES ||
|---|---|
| < 5 YEARS | > 5 YEARS |
| 0 | 1 |

39. The January CrimShield Consumer Report then reported a record stating the following information: "Charge Date: 2012-01-03; Criminal Offense: Felony; Criminal Charge: ATTEMPTED THEFT; Status: Guilty; Disposition Date: 2012-09-05; Court: OUACHITA, LA."

40. Then, in a section titled "SOCIAL SECURITY VALIDATOR," the January CrimShield Consumer Report again reported the last four digits of Plaintiff's social security number, as well as "Complete: 01/07/2022."

41. The January CrimShield Consumer Report then stated "CrimShield has performed an identity verification together with a criminal background investigation of available court criminal records regarding the applicant" and "[t]his report does not guarantee the accuracy of the information as to the subject of the investigation, but only that it is accurately copied from public records…."

42. As demonstrated by such reporting, CrimShield was inaccurately and/or misleadingly reporting records related to the Misdemeanor Charge as if Plaintiff was found guilty of a felony of Attempted Theft on September 9, 2012 (the "Inaccurate Felony Record").

43. Further, CrimShield was reporting that it had validated the Inaccurate Felony Record by using Plaintiff's social security number and that the Inaccurate Felony Record was accurately copied from applicable public records.

44. Plaintiff was humiliated that he was incorrectly being reported as having been found guilty of a felony.

45. On that same day (*i.e.,* on or about January 9, 2022), Plaintiff submitted an online dispute to CrimShield advising that it was reporting the Misdemeanor Charge as a felony.

46. On or about January 10, 2022, Plaintiff received an email for Lori Hines, Director of Customer Service for CrimShield, stating "[t]he court in Ouachita, LA is reporting this as a felony, you will need to provide documents from the court stating that it is a misdemeanor."

47. Plaintiff immediately called clerk of court for the Parish of Ouachita in Louisiana, who confirmed that, indeed, the public records reflected that the initial charge was reduced to a misdemeanor.

48. The clerk of court then emailed Plaintiff several documents to demonstrate that the public records reflected that the initial charge was reduced to a misdemeanor, including, without limitation, a copy of the Amended Bill of Information.

49. That same day (*i.e.,* January 10, 2022), Plaintiff responded to Ms. Hines's email stating that he had just called the Ouachita Parish clerk of court, who confirmed that the charge was amended to a misdemeanor.

50. Plaintiff's email also stated that CrimShield had previously conducted two background checks on Plaintiff, both of which he had passed, and Plaintiff had even received a "CrimShield Verified" badge.

51. Plaintiff then forwarded the documents that the Ouachita Parish clerk of court had sent to him, including the copy of the Amended Bill of Information, demonstrating that the initial charge was amended to a misdemeanor.

52. On or about January 12, 2022, Plaintiff received an email from Brittney Harris, CrimShield Account Specialist, which stated "I apologize for the delay in response. Our lead investigator who usually handles these matters is out with Covid. I had Lori send me your court document for the case in question, which I will review and verify with the court. Once verified, I will update your investigation accordingly and send both you and the company an email."

53. However, Plaintiff did not receive any further communication from CrimShield concerning his dispute as of February 2, 2022.

54. Plaintiff was distressed that he had likely lost the job with CUI on the basis of CrimShield's reporting but was scared to reach out to CUI for fear of sabotaging his job qualifications in the off chance that CUI had not yet considered the Inaccurate Felony Record.

55. Accordingly, on or about February 2, 2022, Plaintiff sent CrimShield a follow-up email requesting an update on CrimShield's investigation into Plaintiff's dispute and stating "I had sent some court documents in on January 10th proving that the charge on my background report was a misdemeanor and not felony. I realize it was after the holidays and your lead investigator was out with covid but it has been 23 days now and my report is still showing it as a felony. Is there any update on this? I probably didn't get that job since it's taking this long but I still would like to know what's happening so this doesn't occur again."

56. Plaintiff did not receive a response from CrimShield.

57. On February 7, 2022, Plaintiff once again accessed his CrimShield consumer report and found that CrimShield hadn't corrected its reporting.

58. The CrimShield consumer report that Plaintiff accessed on February 7, 2022 (the "February CrimShield Consumer Report") was a duplicate of the January CrimShield Consumer Report, other than the "Report Print Date," which read 02-07-2022 (and, upon information and belief, is populated based on the date on which Plaintiff accessed the consumer report).

59. Plaintiff then sent another email to CrimShield on or about February 7, 2022 once again requesting an update on CrimShield's investigation, and stating "[m]y report still shows I have a felony and I need to get this fixed so it doesn't occur again and possibly still get this job if the position is still open. Any help would be appreciated."

60. On or about February 8, 2022, Plaintiff received an email from CrimShield stating "[o]ur team is still verifying with the court the classification of the record reported based on the paperwork you provided."

61. On February 11, 2022 (*i.e.,* 33 days from the date on which Plaintiff had submitted his dispute to CrimShield and 32 days since Plaintiff had sent CrimShield the documents demonstrating the public records reflected the charge was reduced to a misdemeanor), Plaintiff received an email from CrimShield stating the following: "After contacting the court, they are still reporting that the case is a felony and not a misdemeanor. Please contact the court for any further clarification you might need. If they inform you that it is or will be reduced, please provide a notarized copy of the court paperwork showing this."

62. Based on his own communications with the clerk of court, Plaintiff had suspected that CrimShield had not, in fact, contacted the court to confirm whether the charge was reduced to a misdemeanor.

63. That same day, Plaintiff sent an email to CrimShield advising that he had already contacted the clerk of court, that he had already sent CrimShield the documents the clerk of court had sent him, and that they could call the clerk of court to directly to verify that the charge was reduced to a misdemeanor.

64. Finally, on February 15, 2022, Plaintiff received an updated CrimShield report (the "Revised CrimShield Consumer Report"), which (i) stated "Your request to research the below listed subject is now completed;" and (ii) reported "NO CRIMINAL RECORDS FOUND."

65. Nevertheless, the Revised CrimShield Consumer Report still reporting the Security Clearance Disclaimer language, stating "[a]lthough this applicant may pass your employment criteria, this applicant may not pass some of your clients' security clearance criteria for access to your clients' customers, facilities and constructions sites."

66. Plaintiff has been damaged by CrimShield's inaccurate reporting.

67. Because Plaintiff expected to be hired by CUI, Plaintiff gave notice to his then-current employer, Cox Communications, with Plaintiff's last day of employment set to be January 25, 2022.

68. As of the date of this complaint, Plaintiff still does not know whether he has lost the CUI employment opportunity.

69. CrimShield represented to Plaintiff that it would update CUI with the results of CrimShield's investigation into Plaintiff's dispute.

70. Nevertheless, CUI has not sent Plaintiff any further communications related to Plaintiff's employment.

71. Plaintiff, an experienced cable technician that passed two prior CrimShield background checks prior to having applied with CUI, is sufficiently qualified for the CUI job for which he had applied.

72. Indeed, the CUI representative had represented to Plaintiff that the Plaintiff was a good fit for the job, and CUI had sent an email congratulating Plaintiff on his new position.

73. Upon information and belief, despite CrimShield's representations that it would update CUI with the results of CrimShield's investigation into Plaintiff's dispute, CrimShield has failed to send CUI the Revised CrimShield Consumer Report.

74. In the alternative, CrimShield has sent the Revised CrimShield Consumer Report, but the initial inaccurate reporting has either caused a significant delay in Plaintiff's on-boarding process at CUI or has caused Plaintiff to lose his employment with CUI altogether.

75. Although Plaintiff is extremely anxious concerning the outcome of CUI's review of the CrimShield background check, Plaintiff cannot bring himself to reach out to CUI for fear of somehow contributing to his disqualification for employment.

76. As a direct result of CrimShield's inaccurate reporting and delayed investigation into Plaintiff's dispute, Plaintiff has lost the income he would have earned

from the date on which he would have otherwise been fully on-boarded into CUI's employment system.

77. In addition, Plaintiff is in constant distress, as he is unsure of the status of his employment with CUI.

78. CrimShield's reporting also caused Plaintiff to be scared to apply for further jobs and consent to further background checks, as Plaintiff feels there is no way for him to be sure the inaccurate reporting won't be repeated.

79. As a result of this constant distress, Plaintiff has suffered and continues to suffer from stress-induced breakouts of eczema and/or other skin irritations.

80. Further, Plaintiff's constant worrying about the circumstances created by CrimShield's inaccurate reporting and delayed investigation has caused and continues to cause Plaintiff to suffer from an erratic and inconsistent sleep schedule, leading to Plaintiff losing several hours of sleep a night.

81. As demonstrated by CrimShield's reporting, CrimShield failed to maintain and employ reasonable procedures to assure maximal accuracy of the consumer information it reported to third parties concerning Plaintiff.

82. CrimShield knows its services are used to make significant consumer decisions concerning employment.

83. Nevertheless, instead of employing reasonable procedures as required by the FCRA, CrimShield, upon information and belief, blindly collects information in an unreliable manner without verifying the information it collects.

84. Alternatively, CrimShield, upon information and belief, blindly collects information in an unreliable manner from unreliable third-party vendors to repackage and sell in its own consumer reports.

85. Upon information and belief, CrimShield buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is maximally accurate.

86. Upon information and belief, none of CrimShield's third-party vendors warrant the accuracy of the information they sell.

87. Upon information and belief, CrimShield does not independently investigate the information it buys from third-party vendors before reporting such information in consumer reports.

88. Upon information and belief, CrimShield does not exercise the due diligence necessary to ensure the reliability of its third-party vendors.

89. Upon information and belief, CrimShield does not conduct periodic quality assurance audits to ensure that it is receiving reliable information from its third-party vendors and/or reporting information in a maximally accurate manner.

90. Upon information and belief, CrimShield knowingly and willfully maintains deficient procedures because employing reasonable procedures to ensure it meets its duties under the FCRA would reduce its profits.

91. Upon information and belief, CrimShield has been sued under the FCRA in the past.

92. Therefore, CrimShield has actual notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

93. Despite such notice, CrimShield recklessly, knowingly and/or willingly failed and continues to fail to employ procedures that assure only maximally accurate consumer information is compiled concerning consumers and published in its consumer reports.

94. The injuries suffered by Plaintiff as a direct result of CrimShield's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

95. At common law, CrimShield's conduct would have given rise to causes of action based on defamation and invasion of privacy.

96. CrimShield's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

97. Alternatively, CrimShield's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

98. In any event, CrimShield is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**CAUSES OF ACTION**
**COUNT I**
**Against CrimShield for Violations of the FCRA,**
**15 U.S.C. § 1681e**

99. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

100. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

101. CrimShield violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

102. Specifically, CrimShield willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting that Plaintiff was found guilty of a *felony* of Attempted Theft.

103. CrimShield's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

104. CrimShield is therefore liable to Plaintiff for its negligent and/or willful failures to follow reasonable policies and procedures.

105. As a result of CrimShield's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

# COUNT II

## Against CrimShield for Violations of the FCRA, 15 U.S.C. § 1681i

106. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

107. Upon receiving a consumer's dispute, consumer reporting agencies are legally required to conduct a reasonable and timely investigation and correct the disputed information, as follows:

> *. . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer,* **and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute,** *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* **in accordance with paragraph (5),** *before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.*

15 U.S.C. Id. §1681i(a)(1) (emphasis added).

108. Consumer reporting agencies are further required to provide prompt notice of the consumer's dispute to the furnisher of the disputed information, as follows:

> (A)   *In general.* **Before the expiration of the 5-business-day period** beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), *the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person*. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*Id.* §1681i(a)(1) (emphasis added).

109. Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> **A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….**

*Id*. §1681i(a)(5)(C).

110. CrimShield violated § 1681i on one or more occasions, as Plaintiff disputed the inaccurate information reported by CrimShield, and still, CrimShield willfully, intentionally, recklessly, and/or negligently failed to perform a reasonable reinvestigation and correct or remove the inaccurate and/or misleading information within 30 days of receiving notice of Plaintiff's dispute.

111. Instead, even after 30 days from the date on which CrimShield received notice of Plaintiff's dispute, CrimShield continued to report the inaccurate and/or misleading information and refused to correct the reporting.

112. Further, in response to Plaintiff's dispute, CrimShield placed the onus of its own investigation on Plaintiff and stated that Plaintiff would have to provide documents from the court stating that the charge was reduced to a misdemeanor.

113. Despite Plaintiff following CrimShield's request and providing documents directly from the clerk of court demonstrating the charge was reduced to a misdemeanor, CrimShield still refused to correct its reporting within the time legally allotted by the FCRA.

114. Even after 30 days from the date on which CrimShield received notice of Plaintiff's dispute, CrimShield again placed the onus of its own investigation on Plaintiff, demanding that Plaintiff send notarized documents demonstrating that the initial felony charge was reduced to a misdemeanor, even though (i) Plaintiff had sent CrimShield a copy of the Amended Bill of Information, and (ii) the public records of Parish of Ouachita demonstrate that Plaintiff was not found guilty of a felony.

115. Moreover, CrimShield also violated 1681i on one or more occasions, as it willfully, intentionally, recklessly, and/or negligently failed to maintain reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

116. Finally, even once CrimShield produced the Revised CrimShield Consumer Report, it was still reporting the Security Clearance Disclaimer language which misleadingly reflected that Plaintiff may not pass some of CUI's clients' security clearance criteria.

117. CrimShield's violations of 15 U.S.C. § 1681i were a direct and proximate cause of Plaintiff's injuries, as alleged herein, and CrimShield is therefore liable to Plaintiff for its negligent and/or willful violations of the FCRA.

118. As a result of CrimShield's violations of 15 U.S.C. § 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a judgment:

i.  Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii.  Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii.  Awarding such other relief as to this Court may seem just and proper.

**JURY DEMAND**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 3, 2022

/s/ David A. Chami
David A. Chami
AZ No. 027585
dchami@cjl.law
**The Consumer Justice Law Firm**
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (480) 626-2359

*Attorney for Plaintiff*